**Karen TAYLOR, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 84–1475.

District of Columbia Court of Appeals.

Argued June 25, 1986.
Decided Oct. 10, 1986.

Adelaide M. Miller, Washington, D.C., for appellant.

Karen S. Dworkin, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and MACK and STEADMAN, Associate Judges.

PER CURIAM:

Karen Taylor broke her ankle when she slipped and fell on an icy sidewalk in front of and adjacent to that portion of the U.S. Department of Labor building located on the southwest corner of Third Street and Indiana Avenue, N.W., facing the District of Columbia building at 300 Indiana Avenue, N.W. She sued the District of Columbia for damages. The District orally moved for dismissal or summary judgment, arguing that the District owed no duty to Taylor because she fell on a sidewalk by United States government property, a stipulated fact. The trial court ruled from the bench that the case of *Daniels-Lumley v. United States*, 113 U.S.App.D.C. 162, 306 F.2d 769 (1962), was controlling and that he had no choice but to dismiss the case. Taylor timely[1] appealed. We set aside the dismissal and remand the case for further proceedings.

---

[1] The District incorrectly contends that Taylor's appeal is untimely. The May 23, 1984 trial jacket entry was microfilmed for the court records on June 4 (at the earliest) and thus "entered" on the latter date. D.C.App.R. 4–II(a)(3) (1984); Super.Ct.Civ.R. 79(a). Taylor's June 6 "motion to amend judgment" asserted legal error, Super.Ct.Civ.R. 59(e), and terminated the running of the time to appeal. D.C. App.R. 4–II(a)(2) (1984); *Capozio v. American Arbitration Ass'n,* 490 A.2d 611, 614 n. 5 (D.C. 1985). Taylor filed her notice of appeal within the requisite 30 days after the motion was denied.

Dismissal for failure to state a claim is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 363 (D.C. 1984), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

The trial court correctly ruled that under Section 3 of the Snow Removal Act, now D.C. Code § 7–903 (1981),[2] as interpreted in *Daniels-Lumley, supra,* the United States has primary responsibility for removing snow and ice from sidewalks in front of and adjacent to federally owned and occupied[3] buildings, and the District has no statutory liability therefor. However, *Daniels-Lumley* specifically noted the "question not now before us" whether the District might be subject to a common-law obligation regarding the removal of snow and ice from sidewalks such as the one involved in that case and in an accompanying footnote stated:

> The existence of a District custodial force for snow removal in a particular area, the prior practice of the District in undertaking such snow and ice treatment of a particular sidewalk, repeated unremoved accumulations (or other forms of "notice" to the District), are all factors which might be pertinent to the question of the existence of a common law duty on the part of the District. However, no such showing was made in this case.

113 U.S.App.D.C. at 167 n. 10, 306 F.2d at 774 n. 10 (1962).

The pretrial statement of the District of Columbia, in asserting that it was in no way negligent, contained a claim that a "[m]aintenance crew had cleaned the walkways in question on January 15, 1978," the day before the accident.[4] After counsel for the District completed his argument on the motion, counsel for Taylor drew the court's attention to this pretrial statement. The court asked the District's counsel, "Who customarily removes the snow, do you know?". Counsel for the District replied, "I honestly don't know," but also asserted "I don't think that's an issue before the court right now." Taylor's counsel shortly thereafter further observed:

> D.C. admits knowing that a maintenance crew [was] out there cleaning the walkway in question on January the 15th. It would be important to know whose crew that was, Your Honor, for the reason that we want to know what they did with the snow because some of that snow became water which became ice. And I think that might be an issue not only as to whether it was removed reasonably well, but also whether or not it was left in such a way as to form ice, and that might bring in liability on the part of the people who are doing it.

Thus the possibility was left open that the District might be proven subject to some non-statutory liability.[5] We, there-

---

2. The Snow Removal Act was enacted in 1922, 42 Stat. 845. Among other things, it parceled out between the federal and District authorities responsibility for snow and ice removal on sidewalks in front of public buildings. Section 3 was previously codified as D.C. Code § 7–803 (1973), and is so cited in *Daniels-Lumley.*

3. In *District of Columbia v. Campbell,* 103 U.S. App.D.C. 20, 254 F.2d 357 (1958), a case interpreted and distinguished in *Daniels-Lumley,* the District was held liable where the building in question was built on federal land but was controlled, if not owned, by the District, and where the District maintained in the building a custo-

dial force expressly charged with the duty of clearing the sidewalks around the building. The building housed the Municipal Court of the District of Columbia.

4. The "Pretrial Proceeding" report signed by the pretrial judge stated that "Defendant [District of Columbia] also claims that it specifically shoveled the sidewalk on January 15, 1978, the day before the accident."

5. On the incomplete record before us, we express no opinion about the existence or scope of any such common-law liability.

fore, must conclude that under the standard of *Vicki Bagley Realty, Inc., supra,* the dismissal was inappropriate,[6] and must be set aside. The case is remanded for further proceedings.[7]

*So ordered.*

6. Although entered as a dismissal, the trial judge's action might be treated as a summary judgment ruling. Super.Ct.Civ.R. 12(b), 56. So viewed, it is equally vulnerable since a material fact was at issue. *Nader v. de Toledano,* 408 A.2d 31, 41–42 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980).

7. We might add that it appears the court may have been understandably misled by counsels' inartful indication of the issue before the court as a "clear jurisdiction theory" and not possible "third-party liability" to the general public.